Joseph G. Sansone
Julia C. Green
Gregory Bockin
Karen M. Klotz[*]
Han Nguyen
SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
(267) 602-2133 (Green)
Email: greenju@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>                    v.<br><br>CHRISTOPHER B. FERGUSON and BRIAN P. MCFADDEN,<br><br>                              Defendants. | 1:26-cv-01482<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission") for its Complaint against

Defendants Christopher B. Ferguson ("Ferguson") and Brian P. McFadden ("McFadden")

(collectively, "Defendants"), alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1.  This case involves false and misleading information that Edison Nation, Inc.

("Edison Nation") disseminated to the market in an April 16, 2020 press release, and in a Form

---

[*] Application for admission *pro hac vice* to be filed.

8-K filed with the Commission attaching the press release, concerning its nascent personal protective equipment business.

2. Ferguson, Edison Nation's Chief Executive Officer ("CEO"), and McFadden, a consultant, had been negotiating with a distribution company for the purchase of $9 million worth of hand sanitizer. Two days before Edison Nation issued the press release, however, the distribution company informed Ferguson and McFadden that it was unable to proceed with the transaction.

3. Before the financial markets opened on April 16, 2020, Edison Nation, at the direction of Ferguson and McFadden, issued a press release announcing, "Edison Nation Medical Secures Over $10 Million in Purchase Orders for Personal Protective Equipment in First Week Since Launch."

4. The press release was false and misleading, as Edison Nation had not secured over $10 million in purchase orders, but rather, in the absence of a final agreement for the $9 million order, had only $2.54 million in purchase orders as of April 16, 2020.

5. In the wake of this news, Edison Nation's share price spiked from $1.67 as of the prior trading day's closing to $4.96 by market open on April 16, 2020—an increase of 197%.

6. After the announcement on April 16, 2020, McFadden sold 33,290 shares of Edison Nation stock.

7. By trading during the time that Edison Nation's stock price was artificially inflated by the false press release, McFadden obtained illicit profits of approximately $75,208.

**VIOLATIONS**

8. By engaging in the conduct described in this Complaint, Defendant Ferguson has violated, and unless enjoined will continue to violate, Section 17(a)(3) of the Securities Act of

1933 ("Securities Act") [15 U.S.C. § 77q(a)(3)], and Defendant McFadden has violated, and unless enjoined will continue to violate, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

9. The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)].

10. The Commission seeks a final judgment: (a) permanently restraining and enjoining Defendant Ferguson from directly or indirectly engaging in conduct in violation of Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)]; (b) permanently restraining and enjoining Defendant McFadden from directly or indirectly engaging in conduct in violation of Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)]; (c) ordering Defendant McFadden to pay disgorgement of illicit profits with prejudgment interest thereon; (d) ordering Defendants Ferguson and McFadden to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; (e) prohibiting Defendants Ferguson and McFadden from acting as officers or directors of a public company pursuant to Section 21(d)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)(5)]; and (f) ordering such other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)].

12. Defendants directly and indirectly have made use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, or courses of business alleged herein.

3

13. Venue lies in this judicial district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)]. Certain of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the Southern District of New York.

14. At all times relevant to this Complaint, Edison Nation's stock was listed on the Nasdaq stock exchange, trading under the symbol "EDNT," and Nasdaq is headquartered in this District. Additionally, Edison Nation's April 16, 2020 press release was disseminated over the internet and reached readers in this District.

## DEFENDANTS

15. **Christopher B. Ferguson**, age 57, is a resident of Fishers, Indiana and is currently retired. He served as CEO of Edison Nation from July 2017 through October 2021.

16. **Brian P. McFadden**, age 40, is a resident of Safety Harbor, Florida. In April 2020, McFadden was a consultant to Edison Nation. By the end of 2020, McFadden became Edison Nation's Chief Strategy Officer.

## RELEVANT ENTITY

17. **Edison Nation, Inc.**, was a Nevada corporation with its principal place of business in Bethlehem, Pennsylvania. At all times relevant to this Complaint, Edison Nation's stock traded on the Nasdaq.

## TOLLING OF THE STATUTE OF LIMITATIONS

18. Defendant Ferguson has entered into tolling agreements with the Commission that toll the statute of limitations from February 1, 2025 through April 2, 2025, and from May 1, 2025 through February 26, 2026.

19. Defendant McFadden has entered into tolling agreements with the Commission that toll the statute of limitations from February 3, 2025 through April 4, 2025, and from May 1, 2025 through February 26, 2026.

## FACTS

I. **Edison Nation Issues a False Press Release Announcing it "Secures Over $10 Million in Purchase Orders for Personal Protective Equipment"**

    A. **Edison Nation Enters the Personal Protective Equipment Business in March 2020**

20. Edison Nation was a product innovation company that helped inventors bring their products to market. In late March 2020, as Edison Nation experienced a decline in business due to the COVID-19 pandemic, Edison Nation pivoted its business to selling healthcare related products, including hand sanitizers, face masks, and other personal protective equipment products.

21. From in or about late March 2020 through early April 2020, McFadden, a consultant to Edison Nation, was involved in Edison Nation's efforts to secure personal protective equipment.

22. In March and April 2020, Edison Nation compensated McFadden and others with shares of Edison Nation common stock.

23. On April 6, 2020, McFadden proposed to Ferguson a schedule of upcoming press releases to highlight Edison Nation's progress as it pivoted to the personal protective equipment space.

    B. **Ferguson and McFadden Unsuccessfully Attempt to Negotiate a $9 Million Purchase Order for Hand Sanitizer**

24. On or about April 13, 2020, Ferguson and McFadden began negotiations with a privately-owned distribution company based in Miami, Florida ("Distribution Company") that

was interested in buying $9 million worth of hand sanitizer. Ferguson and McFadden also communicated with a logistics company ("Logistics Company") that might facilitate the delivery of hand sanitizer to the Distribution Company.

25. The Distribution Company's CEO told Ferguson and McFadden that the Distribution Company needed to have the order in place by 4:00 p.m. on April 14, 2020, in order for the transaction to proceed. Edison Nation and the Distribution Company failed to finalize terms of the purchase order by that time.

26. On April 13, 2020, after receiving a draft purchase order from the Distribution Company, McFadden emailed Ferguson stating, "Let's get this closed ASAP so we can announce it this week."

27. Over the next 24 hours, Ferguson and McFadden had numerous communications, including at least one conference call, with the CEOs of the Distribution Company and the Logistics Company. McFadden and Ferguson also attempted to source enough hand sanitizer to fulfill the anticipated order.

28. At 5:19 p.m. on April 14, 2020, the Logistics Company's CEO emailed McFadden, copying Ferguson, stating, "As the holiday … approaches I want to confirm that you have no issues with the escrow agreement the way it is. We only have about two hours to confirm this and then we will be out of touch."

29. At 5:39 p.m. on April 14, 2020, Ferguson emailed the Distribution Company's CEO stating, "We are good with the agreement."

30. One hour later, at 6:43 p.m., the Distribution Company's CEO responded to Ferguson's email and copied McFadden:

6

> Hello Chris,
> I wanted to contact you directly with this urgent update.
> As we discussed earlier on our phone call at 11:45 am today, I had to have an order in place by 4 pm today. We did attempt to confirm this PO with you numerous times throughout the day via email, phone, and text. Please understand the severity of the situation on our end being able to procure the product for our client in the time allotted to us.
> Unfortunately, the deadline was not able to be met.
> It is with deep regret that I am unable to proceed ahead at this time.
> I am very interested in reviewing the brochure your team mentioned sharing on our call and working on other PPE items.
> I thank you for your understanding and hope we can work together on other projects. As we discussed, I am going into a Religious Holiday this evening but please feel free to reach out to me anytime on Friday [April 17, 2020] to discuss directly.

31. At 7:03 p.m., Ferguson re-sent to the Distribution Company's CEO Ferguson's email from 5:39 p.m. stating, "We are good with the agreement." The Distribution Company's CEO responded at 7:13 p.m., stating, "[U]nfortunately, the … holiday is commencing in a few minutes. I would love to get on a call with you after the holiday this Friday."

32. Ferguson replied to the Distribution Company's CEO in an email at 7:18 p.m. stating, "Ok. Sorry. I thought the email response confirming our acceptance was sufficient and then simply waiting for the docusign." In a separate email at 7:20 p.m., Ferguson stated, "I believe that we executed a previous version. I apologize if somehow I missed a step."

33. At 7:22 p.m., McFadden sent an email to the Distribution Company's CEO, copying Ferguson, apologizing for any confusion. McFadden concluded the email by stating, "Enjoy the holiday and I look forward to connecting."

34. Edison Nation never finalized a deal with the Distribution Company, and the Distribution Company never executed a final purchase order with Edison Nation for $9 million worth of hand sanitizer.

### C. Edison Nation Issues a False Press Release and its Stock Price Increases by Approximately 197%

35. On April 13, 2020, Edison Nation's leadership determined that the company should prepare a press release in anticipation of the $9 million purchase order.

36. Ferguson and McFadden provided the information to include in the press release and Ferguson contributed a quote.

37. On April 14, 2020, an Edison Nation contractor sent the first of several drafts of the press release to Ferguson and McFadden for their review and revision.

38. On April 15, 2020, after the Distribution Company had terminated negotiations for the purchase of $9 million worth of hand sanitizer, McFadden continued to revise the press release, copying Ferguson on his drafts.

39. On April 16, 2020, at 7:30 a.m., Edison Nation broadly and publicly disseminated a press release through Globe Newswire announcing, "Edison Nation Medical Secures Over $10 million in Purchase Orders for Personal Protective Equipment in First Week Since Launch."

40. The press release was false and misleading. Edison Nation never secured a $9 million purchase order from the Distribution Company or any other company prior to the issuance of the press release. At the time it issued the press release, Edison Nation had secured only approximately $2.5 million in purchase orders for personal protective equipment.

41. Based on their communications with the Distribution Company's CEO, Ferguson and McFadden were at least negligent in not knowing that the April 16, 2020 press release was false and misleading.

42. On April 15, 2020, the day before Edison Nation issued the press release, Edison Nation's stock price closed at $1.67 per share on Nasdaq.

43. On April 16, 2020, at 9:30 a.m., Edison Nation's stock price opened at $4.96 per share, an increase of approximately 197% from the prior trading day's closing price. That day, Edison Nation's stock price reached a high of $5.20.

**D. Ferguson Signs and Files with the Commission a Form 8-K Attaching the False April 16, 2020 Press Release**

44. On or about April 17, 2020, Edison Nation, at Ferguson's direction, filed a Form 8-K with the Commission, disclosing that Edison Nation had "issued a press release regarding purchase orders received by its medical division."

45. The Form 8-K attached a copy of the false and misleading April 16, 2020 press release stating, "Edison Nation Medical Secures Over $10 Million in Purchase Orders for Personal Protective Equipment in the First Week Since Launch."

46. Ferguson signed the Form 8-K as the CEO of Edison Nation.

47. The Form 8-K was false and misleading. Edison Nation had not secured over $10 million in orders when the Form 8-K was filed on or about April 17, 2020. Edison Nation did not finalize a deal with the Distribution Company and never secured a $9 million purchase order from the Distribution Company.

**E. McFadden Sells Edison Nation Shares at Artificially Inflated Prices**

48. On April 16, 2020, McFadden sold 33,290 shares of Edison Nation stock for a total of approximately $130,802.

49. Because the false and misleading press release had inflated Edison Nation's share price, McFadden realized approximately $75,208 more in profits than he would have obtained had he sold those shares immediately before the issuance of the press release.

9

**II.     Defendants Violated the Federal Securities Laws**

50.    Defendants caused Edison Nation to issue a materially false and misleading press release, which was attached as an exhibit to a Form 8-K filed with the Commission.

51.    On April 14, 2020, at 6:43 p.m., Ferguson and McFadden received an email from the Distribution Company's CEO informing them that the Distribution Company was "unable to proceed" with the $9 million purchase order.

52.    Ferguson and McFadden continued to review and edit drafts of the press release and authorized its dissemination before the markets opened on April 16, 2020 without reconnecting with the Distribution Company.

53.    Defendants engaged in the conduct described herein in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce, the instrumentalities of interstate commerce, and/or by use of the mails.

54.    In April 2020, shares of Edison Nation stock traded on the Nasdaq.

55.    A reasonable investor would have considered the April 16, 2020 press release important when considering whether to buy Edison Nation stock. In fact, Edison Nation's share price spiked from $1.67 as of the prior trading day's closing to $4.96 by market open on April 16, 2020—an increase of 197%.

56.    In connection with the conduct described herein, Defendants acted at least negligently. Defendants were at least negligent in not knowing that they were engaging in deceptive conduct and that the press release contained materially false and misleading information.

57.    McFadden obtained money by means of the materially false press release when he sold shares of Edison Nation stock into an artificially inflated market on April 16, 2020.

### FIRST CLAIM FOR RELIEF
**Violations of Section 17(a)(3) of the Securities Act**
**(Against Ferguson)**

58. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 57 as if they were fully set forth herein.

59. By engaging in the conduct described above, Defendant Ferguson, directly or indirectly, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, at least negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

60. By engaging in the conduct described above, Defendant Ferguson violated, and unless enjoined will continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

### SECOND CLAIM FOR RELIEF
**Violations of Sections 17(a)(2) and (3) of the Securities Act**
**(Against McFadden)**

61. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 57 as if they were fully set forth herein.

62. By engaging in the conduct described above, Defendant McFadden, directly or indirectly, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in the offer or sale of securities, at least negligently: (a) obtained money or property by means of one or more untrue statements of a material fact or any omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (b) engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

63. By engaging in the conduct described above, Defendant McFadden violated, and unless enjoined will continue to violate, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendant Ferguson from directly or indirectly engaging in conduct in violation of Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)];

### II.

Permanently restraining and enjoining Defendant McFadden from directly or indirectly engaging in conduct in violation of Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)];

### III.

Ordering Defendant McFadden to disgorge all ill-gotten gains and pay prejudgment interest thereon;

### IV.

Ordering Defendants Ferguson and McFadden to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)];

### V.

Prohibiting Defendants Ferguson and McFadden, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], from serving as officers or directors of any entity having

a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

## VI.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated: Philadelphia, PA
February 23, 2026

SECURITIES AND EXCHANGE COMMISSION

*/s/ Julia C. Green*
Joseph G. Sansone
Julia C. Green
Gregory Bockin
Karen M. Klotz*
Han Nguyen
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
(267) 602-2133 (Green)
Email: greenju@sec.gov

Attorneys for Plaintiff